## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| HUTTIG BUILDING PRODUCTS, INC., *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   **Court No. 20-00045** |
| | ) |
| UNITED STATES, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## <u>MOTION TO INTERVENE</u>

Pursuant to Rule 24 of the Rules of the United States Court of International Trade, American Steel Nail Coalition (the "Coalition"),[1] by and through its attorneys, respectfully requests that the Court grant this Motion to Intervene in the above-captioned action as Defendant-Intervenor.  The Coalition accounts for a super-majority of the production of the steel nails included in Annex 2 to Presidential Proclamation 9980 issued on January 24, 2020 entitled, "Adjusting Imports of Derivative Aluminum Articles and Derivative Steel Articles Into the United States" (the "Proclamation").  *See* Proclamation No. 9980, 85 Fed. Reg. 5,281 (Jan. 29, 2020).

## I.    **CONSENT OF THE PARTIES**

As required by Rule 7 of this Court, on February 21, 2020, Adam H. Gordon, counsel to the Coalition, consulted with the parties to this action regarding this Motion.  Counsel for Plaintiffs, Andrew Caridas of Perkins Coie LLP, declined to consent.  Counsel for Defendants,

---

[1] The members of the Coalition are:  Mid Continent Steel & Wire, Inc.; KYOCERA SENCO Industrial Tools, Inc.; Tree Island Wire (USA) Inc.; Specialty Nail Company; Legacy Fasteners, LLC; and American Fasteners Co., Ltd.

Tara K. Hogan of the United States Department of Justice, had not indicated Defendants'

position with respect to this Motion as of the time of filing.

## II.   DISCUSSION

Plaintiffs Huttig Building Products, Inc. and Huttig, Inc. (collectively, "Huttig" or

"Plaintiffs") instituted this action to challenge the issuance and implementation of the

Proclamation as applied to Plaintiffs.  *See* Huttig's Compl. (Feb. 18, 2020), ECF No. 5.

The Coalition meets the standard for intervention as of right under Rule 24(a) of the

Rules of this Court.  Pursuant to Rule 24(a), this Court must permit intervention by anyone who:

> claims an interest relating to the property or transaction that is the subject
> of the action, and is so situated that disposing of the action may as a practical
> matter impair or impede the movant's ability to protect its interest, unless
> existing parties adequately represent that interest.

USCIT R. 24(a)(2).  To succeed on a motion to intervene as of right, a movant must satisfy the

following four-factor test:

> {f}irst, the application for intervention must assert an interest in the subject
> matter of the primary litigation; second, it must appear that the applicant's
> interest will be impaired by disposition of the suit; third, the applicant's
> interest must not be adequately represented by the existing parties to the
> suit; and finally, the application for intervention must be timely filed.

*Dixon v. Ticonderoga Co. v. United States Customs & Border Protect.*, 391 F. Supp. 1294, 1296

(Ct. Int'l Trade 2005) (internal citations omitted).  The nature of the movant's interest "must be a

significantly protectable {one}," and cannot be "indirect," "remote{,}" or "contingent."  *Vivitar*

*Corp. v. United States*, 585 F. Supp. 1415, 1417-18 (Ct. Int'l Trade 1984) (internal citations

omitted).  This Court has considered the second factor (*i.e.*, impairment of movant's interest by

disposition of the suit) to be "a flexible one."  *Id.* at 1418.

This Court granted a motion to intervene as of right under Rule 24(a)(2) in *Vivitar Corp.*,

585 F. Supp. 1415.  With respect to the first factor, this Court found the movant's "obvious

economic interests," and "its interest in avoiding significant changes in the conduct of its business," to be significantly protectable. *Id.* at 1418.  As to the second, "flexible" factor, the Court considered the fact that the movant could be "forced out" of the market as a result of the action to be sufficient.  *Id.*  Regarding the third factor, the Court noted its reluctance to view the Government's and the movant's interests as "coincident."  *Id.* at 1419.  In its analysis, the Court emphasized that the movant's interests were "purely private, commercial ones relating to monetary and business concerns," whereas the Government's interests "{we}re public and enforcement oriented."  *Id.* at 1419.

Like the movant in *Vivitar Corp.*, the Coalition satisfies each of the factors required for a motion to intervene as of right under Rule 24(a)(2).  First, the Coalition has "obvious economic interests" in this action.  Plaintiffs' Complaint relates to Proclamation 9980, which imposes a 25 percent *ad valorem* tariff on imports of "derivative" steel products, and a 10 percent *ad valorem* tariff on imports of "derivative" aluminum products.  *See* 85 Fed. Reg. 5,281, 5,283; Huttig's Compl. (Feb. 18, 2020), ECF No. 5.

Paragraph 6 of the Proclamation provides three criteria for an article to be considered "derivative" and thus covered by the duties:  (a) the aluminum article or steel article represents, on average, two-thirds or more of the total cost of materials of the derivative article; (b) import volumes of such derivative article increased year-to-year since June 1, 2018, in comparison to import volumes of such derivative article during the two preceding years; and (c) import volumes of such derivative article following the imposition of the tariffs exceeded the four percent average increase in the total volume of goods imported into the United States during the same period since June 1, 2018.  *See id.* at 5,282.

Steel comprises, on average, two-thirds or more of the total cost of materials of the derivative article here, steel nails, thereby meeting criterion (a).  Being composed of the largest producers of steel nails in the United States, the Coalition clearly has an economic interest in an action challenging the Proclamation.  *See* Katie Lobosco, *Largest US Nail Manufacturer Clings to Life under Steel Tariffs*, CNN Business, Sept. 4, 2019 (*available at* https://money.cnn.com/2018/09/04/news/companies/tariffs-layoffs-mid-continent-nail/index.html (stating that Mid Continent is the "largest U.S. producer of nails") (attached hereto as Exhibit 1).

Second, the interests of the Coalition may be impaired by disposition of this action.  To properly assess such impairment, the purpose behind Proclamation 9980 must be understood.  According to Proclamation 9980, Section 232 duties on derivative articles are:

> necessary and appropriate to address circumvention that is undermining the effectiveness of the adjustment of imports made in Proclamation 9704 and Proclamation 9705, as amended, and to remove the threatened impairment of the national security of the United States found in those proclamations.

85 Fed. Reg. at 5,283.

Since issuance of the Proclamation, Coalition members have experienced significant increases in orders, leading to increases in production, employment, and purchases of raw materials from upstream basic steel producers.  These are directly intended benefits of the Proclamation.  Enjoining the tariffs imposed by the Proclamation, an Executive Proclamation entitled to a presumption of legality and regularity, will allow circumventing imports to continue to enter the United States, and cause the Coalition to lose sales and likely orders that have been placed.  This is turn will result in reductions in employment, as workers hired in response to the intended effects of the Proclamation will be terminated.  This also will cause Coalition members

to reduce purchases of basic steel products and potentially orders placed in response to the significant increase in demand following issuance of the Proclamation.

The purpose of Proclamation 9980, an Executive Proclamation entitled to a presumption of legality and regularity, will be substantially undermined if the Court enjoins the implementation or enforcement of the Proclamation against Huttig.  Allowing Huttig to avoid paying the tariffs imposed via the Proclamation will cause irreparable harm to the Coalition's members.  Imposition of tariffs on derivative products has had important economic benefits for Coalition members, who have received increased orders, leading to increased purchases of upstream steel inputs from basic steel producers and the hiring of new employees.  If the tariffs ordered by the Proclamation are not allowed to continue in effect, it is likely, if not certain, that members of the Coalition will suffer irreparable harm in the form of cancelled orders and job losses.  This in turn will harm basic steel producers who will not receive increased orders from Coalition members.  Huttig, on the other hand, will incur harm in the form of duties, which will be refunded if Plaintiffs prevail in this litigation.  On balance, the harm the Coalition will experience if Proclamation 9980 is not enforced significantly outweighs any potential harm to Huttig if the Section 232 duties are allowed to remain in full force and effect.

Third, the interests of the Coalition will not be adequately represented by the existing parties to the action.  As this Court stated in *Vivitar Corp.*, 585 F. Supp. 1415, the "private, commercial" interests of the Coalition are not "coincident" to the Government's "public and enforcement oriented" interests.  *Id.* at 1419.  Thus, on this basis alone, the interests of the Coalition may not be represented in this action.

Even with respect to the aligning enforcement interests, however, evidence exists that the interests of the Coalition may not be adequately represented in this action.[2]  Earlier this month, in *PrimeSource Building Products, Inc. v. United States*, CIT Court No. 20-00032, the Government consented to an Order enjoining U.S. Customs and Border Protection ("CBP") from collecting the duties ordered in the Proclamation on imports by that plaintiff.  *See PrimeSource Bldg. Prods., Inc. v. United States*, CIT Court No. 20-00032, Order (Feb. 13, 2020) (attached hereto as Exhibit 2).  On February 21, 2020, the Government consented to another Order enjoining CBP from collecting the duties ordered in the Proclamation on imports by Oman Fasteners, LLC.  *See Oman Fasteners, LLC v. United* States, CIT Court No. 20-00037, Order (Feb. 21, 2020) (attached hereto as Exhibit 3).  These Orders immediately and directly undermines the intended effects of the Proclamation, including the economic benefits members of the Coalition are intended to receive.  Moreover, these Orders almost certainly will encourage other companies to seek to avoid the duties ordered in the Proclamation, undermining the purpose and effect of the Proclamation and potentially flooding the Court's docket with multiple appeals.

Fourth, this Motion is timely filed under Rule 24(a).  "In order to determine whether an application for intervention is timely, consideration must first be given to when the right to intervene actually arose. . . .  Under Rule 24(a)(1), a person's right to intervene arises upon institution of the proceeding."  *Silver Reed Am., Inc. v. United States*, 600 F. Supp. 846, 849-850 (Ct. Int'l Trade 1984) (internal citations omitted).  This Court has held that a motion to intervene made "nearly a month after the filing of plaintiff's complaint and summons were filed" was timely pursuant to Rule 24.  *Vivitar Corp.*, 585 F. Supp. at 1417.  Here, Plaintiffs filed their

---

[2] The Government has not yet filed its Answer in this action.  Therefore, the Coalition is unable to ascertain the Government's claims and interests, further calling into question any suggestion that the Coalition's interests will be adequately represented in this action by the Government.

Complaint on February 18, 2020, merely eight days prior to the filing of this Motion. *See* Huttig's Compl. (Feb. 18, 2020), ECF No. 5.

In the alternative, under Rule 24(b) of this Court, the Court has discretion to permit intervention by a party who "(A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." USCIT R. 24(b)(1). Both grounds for permissive intervention require that intervention "will not unduly delay or prejudice the rights of the original parties," and that the motion be timely made. USCIT R. 24(b)(1), (3).

The Coalition satisfies both criteria for permissive intervention. First, 28 U.S.C. § 2631(j) provides a statutory basis that creates a conditional right to intervene, in accordance with Rule 24(b)(1)(A).[3] This Court has held that, under section 2631(j), permissive intervention is appropriate where "the proposed intervenor would be adversely affected or aggrieved by a decision in a civil action pending in the Court of International Trade. . . ." *Ontario Forest Indus. Ass'n v. United States*, 444 F. Supp. 2d 1309, 1321-22 (Ct. Int'l Trade 2006). "{A}dversely affected or aggrieved . . . represents a congressional intent to cast the {intervention} net broadly — beyond the common-law interests and substantive statutory rights traditionally known to law." *Id.* at 1322 (internal citations omitted).

As discussed above, the Coalition will be adversely affected or aggrieved by a decision in this action if Plaintiffs' motions for a temporary restraining order and/or for preliminary injunction are granted. Among other things, the Coalition will experience severe and irreparable economic harm in the form of lost sales, cancelled orders, and potential reductions in workforce

---

[3] The Court's jurisdiction in this action is founded under 28 U.S.C. § 1581(i). Section 2632(j) of Title 28 allows for permissive intervention in such suits.

added in response to the intended increase in orders resulting from the Proclamation.  In comparison, any duties that Plaintiffs will incur under the Section 232 tariffs can be recovered.  Therefore, the harm the Coalition will incur if Proclamation 9980 is not allowed to remain in effect significantly outweighs any potential harm to Plaintiffs if the Section 232 duties are imposed.

Second, the Coalition "has a claim or defense that shares with the main action a common question of law or fact," USCIT R. 24(b)(1)(B), specifically defenses regarding the lawfulness of the Proclamation and the duties on derivative articles.

Third, intervention by the Coalition will not unduly delay or prejudice the rights of the original parties.  This Court has stated that opponents of a motion to intervene "must allege that the delay would be more than is due or proper:  excessive{.}"  *Ontario Forest Indus. Ass'n*, 444 F. Supp. 2d at 1322 (internal citations omitted).  The Coalition's intervention in this action will not cause an excessive delay.  This Motion is filed eight days after Plaintiffs filed their Complaint, and predates Defendants' filing of an Answer.  *See* Huttig's Compl. (Feb. 18, 2020), ECF No. 5.

Fourth, this Motion is timely filed.  As discussed above, this Court has held that a motion to intervene made "nearly a month after the filing of plaintiff's complaint and summons were filed" was timely pursuant to Rule 24.  *Vivitar Corp.*, 585 F. Supp. at 1417.  Here, this Motion is filed only eight days after Plaintiffs filed its Complaint.  *See* Huttig's Compl. (Feb. 18, 2020), ECF No. 5.

As a final matter, pursuant to Rule 24(c)(1), the Coalition has filed an Answer to Plaintiffs' Complaint simultaneously with this Motion.

*     *     *

## III.   CONCLUSION

For the reasons above, the Coalition respectfully requests that the Court grant this Motion to Intervene as Defendant-Intervenor in the above-captioned action.

Respectfully submitted,

Dated:  February 26, 2020                  */s/ Adam H. Gordon*_____
Adam H. Gordon, Esq.
Jennifer M. Smith, Esq.
Ping Gong, Esq.
Lauren Fraid, Esq.

**THE BRISTOL GROUP PLLC**
1707 L Street, NW
Suite 570
Washington, D.C. 20036
Tel.:  (202) 991-2701
adam.gordon@bristolgrouplaw.com

*Counsel to Proposed Defendant-Intervenor*
*American Steel Nail Coalition*

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2020, I electronically filed the Motion to Intervene with the Clerk of the Court using the CM/ECF system, which will send notification of such to counsel of record.

*/s/ Adam H. Gordon*
Adam H. Gordon

# EXHIBIT 1





# Largest US nail manufacturer clings to life under steel tariffs

by Katie Lobosco    @KatieLobosco

September 4, 2018: 2:32 PM ET

Recommend 4.8K    ✉  f  𝕏  i



Personal Finance

SmartAsset

An Insane Card Offering 0% I
Until Nearly 2020

Transferring Your Balance to a
Month 0% APR is Ingenious

The Top 7 Balance Transfer C
Cards On The Market Today

Get $300 Back With This
Outrageous New Credit Card

US nail company on 'brink of extinction' because of tariffs

The largest nail manufacturer in the United States, Mid Continent Nail, continues to lay off workers as it fights against crippling steel tariffs.

The Missouri company may not be able to keep its doors open through the end of September.

"I can tell you that if we don't get immediate relief, we could be shut down in the next 20 to 30 days," said Chris Pratt, Mid Continent's general operations manager, on a call with reporters Tuesday.

The company said in June that it would have to close by Labor Day if it wasn't granted an exclusion from the tariffs. But a recent meeting with Commerce Secretary Wilbur Ross left them with hope that they would be granted the exclusion.

"Secretary Ross was very sympathetic to our situation, especially the 500 job losses it could cause," Pratt said.

Since the tariffs went into effect in June, Mid Continent has laid off 150 of its 500 employees.

Tariffs pushed up the cost of its raw materials and the company was forced to raise prices on its own customers. When it did, orders plummeted, Pratt said.

The Commerce Department could rule on Mid Continent's exclusion request as soon as Tuesday. But it has been inundated with more than 20,000 requests from companies that say they cannot

                                                                              

President Donald Trump imposed 25% tariffs on imported steel and aluminum earlier this year. The administration said it wants to protect those industries because they are vital to national security. Steelmakers have already benefited from the trade policy, adding jobs and enjoying higher profits.

In its exclusion request, Mid-Continent Nail said it has encountered "significant issues" finding a US company that could supply enough steel wire needed for them to continue production. Plus, finding another supplier requires a "lengthy process of qualification" that could take at least six months, it said.

But Nucor Corporation, the nation's largest steelmaker, objected to Mid Continent's exclusion request. Nucor said it "readily produces" the product as do other domestic steel producers. Mid-South Wire Company, which operates plants in Tennessee and Missouri, also said it could produce what Mid-Continent needs.

Pratt said that neither company on its own could supply enough raw material for Mid Continent.

Mid Continent said it could move production to Mexico, where its parent company Deacero, is based, and then export the finished nails back to the United States without tariffs. The tariffs only apply to the raw materials.

Mid Continent has had a presence it Missouri for more than 25 years. It has roughly doubled in size since it was bought by Deacero in 2012.

It was the second largest employer in the Poplar Bluff, Missouri, area before the layoffs, Pratt said.

"The loss of a company our size in a community this size ... it's going to be detrimental to this economy," he said.

CNNMoney (New York)
First published September 4, 2018: 1:49 PM ET

Search CNN...                                                                            Sea

U.S                World              Politics              Business          Opinion              Health              Entertainr

Crime + Justice    Africa             45                    Markets           Political Op-Eds     Food                Stars
Energy + Environment  Americas        Congress              Tech              Social Commentary    Fitness             Screen
Extreme Weather    Asia               Supreme Court         Media                                  Wellness            Binge
Space + Science    Australia          2018                  Success                                Parenting           Culture
                   Europe             Key Races             Video                                  Vital Signs         Media
                   Middle East        Primary Results
                   UK

Tech               Style              Travel                Sports            Video                Shop                More...

# EXHIBIT 2

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE THE HONORABLE TIMOTHY C. STANCEU, CHIEF JUDGE**

| | |
|---|---|
| PRIMESOURCE BUILDING PRODUCTS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| THE UNITED STATES, DONALD J. TRUMP, IN HIS ) | |
| OFFICIAL CAPACITY AS PRESIDENT OF THE ) | |
| UNITED STATES; WILBUR L. ROSS, JR., IN HIS ) | Ct. No. 20-00032 |
| OFFICIAL CAPACITY AS UNITED STATES ) | |
| SECRETARY OF COMMERCE;  UNITED STATES ) | |
| DEPARTMENT OF COMMERCE; MARK A. ) | |
| MORGAN, IN HIS OFFICIAL CAPACITY AS ACTING ) | |
| COMMISSIONER, UNITED STATES CUSTOMS AND ) | |
| BORDER PROTECTION; UNITED STATES ) | |
| CUSTOMS AND BORDER PROTECTION, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

Plaintiff PrimeSource Building Products, Inc., has moved for a temporary restraining order and a preliminary injunction.  The parties have subsequently represented to the Court that they have reached agreement on the terms of a proposed injunctive order that could be entered upon consent, without the defendants admitting that the plaintiff has demonstrated a likelihood of success on the merits, and which would obviate the need for the Court to decide the merits of the pending motions.  Plaintiff has further indicated that it seeks leave to withdraw its pending motions to permit the Court to enter the parties' joint proposed order.

The parties have further represented that, in light of this agreement, they each waive their respective procedural rights to a preliminary injunction hearing and defendants waive their right

NONCONFIDENTIAL

to respond to the pending motions.  In light of the parties' subsequent agreement on the terms of

an order and request that the Court enter such order, it is hereby ORDERED

That the pending application for a temporary restraining order and motion for preliminary

injunction dated February 12, 2020 is ORDERED WITHDRAWN;

That, by consent of the parties, the following order is ENTERED:

ORDERED that United States Customs and Border Protection (CBP) is enjoined from

collecting duty deposits due pursuant to Proclamation 9980 of January 24, 2020: Adjusting Imports

of Derivative Aluminum Articles and Derivative Steel Articles Into the United States, 85 Fed. Reg.

5281 (January 29, 2020), on entries filed by PrimeSource Building Products Inc. on or after 12:01

am February 8, 2020, excluding any entry filed after on or after February 8, 2020 but before CBP

implements this Order that PrimeSource is unable to or does not correct within the 10-day period

set forth in 19 C.F.R. 142.12 to remove the Section 232 deposit;

ORDERED that the United States is enjoined from liquidating entries filed by PrimeSource

Building Products, Inc. of articles subject to Proclamation 9980;

ORDERED that PrimeSource Building Products, Inc. shall, within 5 business days of the

date of this Order terminate its existing continuous bond and replace it with a continuous bond

with a total limit of liability [ ███████████ ] to reflect the additional Section 232 duties

PrimeSource anticipates it would otherwise have had to deposit over the next prospective six

month period, based on the estimate provided in Confidential Ex. 2 to PrimeSource's Complaint;

ORDERED that the United States and PrimeSource Building Products, Inc., shall confer

prior to the expiry of this initial, and each subsequent, six month period while this Order is in

effect, and review the Section 232 duty deposits foregone and PrimeSource's estimated imports

over the next six-month period and that Prime Source shall further increase the limit of liability of

NONCONFIDENTIAL

its continuous bond to reflect the parties' agreement as to the additional Section 232 duties that would be owed during that subsequent six-month period.

ORDERED that should CBP determine that PrimeSource's imports are in excess of PrimeSource's projections, CBP may seek leave of the Court to require additional security as permitted by applicable law.

It is further ORDERED that this order is effective immediately and continues in effect until judgment is entered, or until it is otherwise modified or dissolved by the Court.

SO ORDERED.

/s/            Timothy C. Stanceu
                     Chief Judge

Dated: February 13, 2020
        New York, New York

# EXHIBIT 3

## UNITED STATES COURT OF INTERNATIONAL TRADE
## HON. TIMOTHY C. STANCEU, CHIEF JUDGE

_____

|  |  |  |
|---|---|---|
| OMAN FASTENERS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 20-00037 |
| | ) | |
| THE UNITED STATES, *et al.*, | ) | **PUBLIC VERSION** |
| | ) | |
| Defendants. | ) | |

_____

### ORDER

Plaintiff Oman Fasteners, LLC ("Oman Fasteners"), has moved for a temporary restraining order and a preliminary injunction. The parties have subsequently represented to the Court that they have reached agreement on the terms of a proposed injunctive order that could be entered upon consent, without the defendants admitting that the plaintiff has demonstrated a likelihood of success on the merits, and which would obviate the need for the Court to decide the merits of the pending motions. Plaintiff has further indicated that it seeks leave to withdraw its pending motions to permit the Court to enter the parties' joint proposed order.

The parties have further represented that, in light of this agreement, they each waive their respective procedural rights to a preliminary injunction hearing and defendants waive their right to respond to the pending motions. In light of the parties' subsequent agreement on the terms of an order and request that the Court enter such order, it is hereby ORDERED

That the pending application for a temporary restraining order and motion for preliminary injunction dated February 7, 2020 are ORDERED WITHDRAWN;

That, by consent of the parties, the following order is ENTERED:

ORDERED that United States Customs and Border Protection ("CBP") is enjoined from

collecting duty deposits due pursuant to Proclamation 9980 of January 24, 2020: Adjusting Imports of Derivative Aluminum Articles and Derivative Steel Articles Into the United States, 85 Fed. Reg. 5281 (January 29, 2020), on entries filed by Oman Fasteners on or after 12:01 am February 8, 2020, excluding any entry filed after on or after February 8, 2020 but before CBP implements this Order that Oman Fasteners is unable to or does not correct within the 10-day period set forth in 19 C.F.R. 142.12 to remove the Section 232 deposit;

ORDERED that the United States is enjoined from liquidating entries filed by Oman Fasteners of articles subject to Proclamation 9980;

ORDERED that Oman Fasteners shall, within 5 business days of the date of this Order ensure that it has in place with CBP a continuous bond with a total limit of liability [

];

ORDERED that Oman Fasteners shall, within 5 business days of the date that is two months from the date of this order, terminate its existing continuous bond and replace it with a continuous bond in the amount of [

].

ORDERED that, the United States and Oman Fasteners shall confer prior to the expiry of the period that is six months from the date of this Order, and each subsequent six-month period while this Order is in effect, and review the Section 232 duty deposits foregone and Oman Fastener's estimated imports over the next six-month period, and that Oman Fasteners shall further increase the limit of liability of its continuous bond to reflect the parties' agreement as to the addition Section 232 duties that would be owed during that subsequent six-month period.

ORDERED that should CBP determine that Oman Fasteners' imports are in excess of Oman Fasteners' projections, CBP may seek leave of the Court to require additional security as permitted by applicable law.

It is further ORDERED that this order is effective immediately and continues in effect until judgment is entered, or until it is otherwise modified or dissolved by the Court.

SO ORDERED.


     /s/ Timothy C. Stanceu
Chief Judge


Dated:  February 21, 2020
     Now York, New York